1  JOHN NEIL McNICHOLAS
   STATE BAR #138304
2  McNicholas Law Office
   464 Palos Verdes Blvd.
3  Redondo Beach, CA 90277
   (310) 545-0780
4  (310) 546-6831- FAX
   john@mcnicholaslawoffice.com
5  Attorney for JING DONG

6

7                  UNITED STATES DISTRICT  COURT

8                  CENTRAL DISTRICT OF CALIFORNIA

9

| 10 | UNITED STATES OF AMERICA, | Case No. 5:19-cr-00027-RGK-3 |
| 11 | Plaintiff, | |
| 12 | vs. | REPLY TO GOVERNMENT'S OPPOSITION TO |
| 13 | USA HAPPY BABY INC., MICHAEL WEI YUEH LIU, AND JING DONG, | DEFENDANT JING DONG'S MOTION TO SUPPRESS EVIDENCE SEIZED PURSUANT |
| 14 | | TO UNCONSTITUTIONALLY |
| 15 | Defendants. | ISSUED SEARCH WARRANT Date of Hearing: March 8, 2024 Time of |
| 16 | | Motion: 10:00 a.m. Location: |
| 17 | | Courtroom 850, 255 East Temple |
| 18 | | Street, Los Angeles, CA 90012 |
| 19 | | |
| 20 | | EVIDENTIARY HEARING REQUESTED |

21

22        Defendant Jing Dong (Ms. Dong), by and through counsel, hereby replies to the

23  government's opposition to her motion to suppress the search of her residence and all

24  business properties pursuant to an unlawfully obtained search warrant obtained

25  without probable cause on March 2, 2015.

26        This reply is supported by the following memorandum of points and authorities,

27  the attached declarations of Jing Dong and counsel, and Exhibit E, filed separately and

28  under seal, the separately filed declaration of Carl R. Knudson which includes Mr.

    Knudson's supplemental report filed as Exhibit 2 and supporting sub-

1   exhibits, also filed separately and under seal, which are fully incorporated into this

2   reply. This reply is also supported by the underlying motion to suppress [Dkt. 110],

3   supporting declarations and exhibits, and all testimony and oral argument to be heard

4   at the requested hearing on this matter.

5              Dated this 10th day of February, 2024.

6                        McNICHOLAS LAW OFFICE

7                        /s/
                         _____
8                        JOHN NEIL McNICHOLAS
                         464 Palos Verdes Blvd.
9                        Redondo Beach, CA 90277
                         (310) 545-0780
10                       Attorney for JING DONG

## MEMORANDUM OF POINTS AND AUTHORITIES

It is perfectly legal for a pregnant Chinese woman to enter the United States with the purpose of giving birth to an American baby. See affidavit of Special Agent Eric Blair ("SA Blair") at p. 9, ¶ 20. SA Blair submitted a poorly drafted search warrant request without the benefit of supporting attachments. No citation was made for any of his representations. The United States Magistrate Judge, Jay C. Gandhi, rubber-stamped the request anyway.  Despite continuous references to Mr. Liu and Ms. Dong being involved in an immigration fraud scheme, SA Blair failed to allege a single instance or example of criminal immigration fraud involving Liu and Dong. SA Blair misrepresented the nature of tax preparation by Liu in order to justify the search warrant. In fact, Liu was compliant with federal tax laws.

The Supreme Court stated in *United States v. Leon* that in issuing a warrant, a judge must "perform his neutral and detached function and not serve merely as a rubber stamp for the police." 468 U.S. 897, 914 (1984). Allowing reviewing judges to rely on the mere assertion that another judge previously issued a warrant in the case without also relying on that other judge's analysis or supporting facts, would encourage judges to rubber-stamp the conclusions of law enforcement and of each other. *United States v. Underwood*, 725 F.3d 1076, 1084 (9th Cir. 2013).

Evidence obtained during the execution of a warrant that lacks probable cause "should generally be suppressed under the exclusionary rule." *United States v. Fisher*, 56 F.4th 673, 683 (9th Cir. 2022). A search warrant is supported by probable cause if the issuing judge finds that, "given all the circumstances set forth in the affidavit before him . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238, 103 S. Ct. 2317, 76 L. Ed. 2d 527 (1983). A reviewing court should find that probable cause is not met when the issuing judge lacked a "'substantial basis for . . . conclud[ing]' that probable cause existed." *Id.* at 238-39 (*quoting Jones v. United States*, 362 U.S. 257, 271, 80 S. Ct. 725, 4 L. Ed. 2d 697 (1960));  *Underwood*, 725 F.3d at 1081.

It is true that the deference given to an issuing judge's determination of probable cause "does not preclude inquiry into the knowing or reckless falsity of the

affidavit on which that determination was based." *Leon*, 468 U.S. at 914; *see also Underwood*, 725 F.3d at 1081 (citation omitted) ("Conclusions of the affiant unsupported by underlying facts cannot be used to establish probable cause."); *Fisher*, 56 F.4th at 683-684. *See United States v. Cervantes*, 703 F.3d 1135, 1139-40 (9th Cir. 2012) (affording little if any weight to detective's conclusory statement that, based on his training and experience, the box in defendant's possession came from a suspected narcotics stash house); *see also Spinelli v. United States*, 393 U.S. 410, 418, 89 S. Ct. 584, 21 L. Ed. 2d 637 (1969); *Gates*, 462 U.S. at 241.

An affidavit must recite underlying facts so that the issuing judge can draw his or her own reasonable inferences and conclusions; it is these facts that form the central basis of the probable cause determination. *United States v. Ventresca*, 380 U.S. 102, 108-09, 85 S. Ct. 741, 13 L. Ed. 2d 684 (1965); *Giordenello v. United States*, 357 U.S. 480, 486, 78 S. Ct. 1245, 2 L. Ed. 2d 1503 (1958) ("The Commissioner must judge for himself the persuasiveness of the facts relied on by a complaining officer to show probable cause. He should not accept without question the complainant's mere conclusion that the person whose arrest is sought has committed a crime."); *United States v. Rubio*, 727 F.2d 786, 795 (9th Cir. 1983) ("The magistrate must be provided with sufficient facts from which he may draw the inferences and form the conclusions necessary to a determination of probable cause."); *United States v. Dubrofsky*, 581 F.2d 208, 212 (9th Cir. 1978) ("A search warrant may not rest upon mere affirmance or belief without disclosure of supporting facts or circumstances."). *Underwood*, 725 F.3d at 1081.

This is not a case where the defense simply disagrees with the analysis of the government. This is a case where pure speculation was required to link defendants to immigration fraud followed by reckless misrepresentations regarding alleged tax fraud.
*///*

## A.    THE GOVERNMENT NEVER ESTABLISHED PROBABLE CAUSE THAT LIU AND DONG WERE ENGAGED IN IMMIGRATION FRAUD.

In *Underwood*, the reviewing Court held that in the totality of the circumstances, the affidavit failed to establish probable cause. The affidavit did not give a reasonable judge sufficient basis to find that it was fairly probable that Underwood was an ecstasy courier or that evidence of ecstasy trafficking would be found at Underwood's house. To conclude otherwise would have required either blind trust in the agent's conclusory statements or the drawing of too many inferences. *Underwood*, 725 F.3d at 1084.

The instant case commenced because people in the community were offended by Chinese women moving to Rancho Cucamonga to have babies, and then returning to their home country. Exh. B, Dkt. 110-2. The problem for local law enforcement was that despite the hostility toward Chinese women engaging in this activity, no crime had been committed. Based upon that, federal prosecutors brainstormed ways to punish the business owners: accuse them of immigration fraud, international money laundering, tax code violations, and aggravated identity theft. See Exh. 2, Knudson affidavit, ¶2(a) referring to Exh.  1-A, SA Blair Affidavit. Despite creativity in investigatory techniques and charging, no defendant in this case has committed a crime. More specifically, despite days of constant surveillance, obtaining tax returns, the stalking and harrassment of birth tourists, the government lacked probable cause to search the defendants' home and business property. The government relied upon reckless, and perhaps intentional misrepresentation to the magistrate in order obtain its search warrant.

SA Blair attempted to entrap defendants into committing immigration fraud by utilizing another agent to draft an email on February 25, 2015 impersonating a Chinese birth tourist. See USA_Reports_000034, et. Seq, attached hereto and incorporated herein as Exhibit E. Nobody responded to the email. *Id.*

From SA Blair's affidavit, here is what supports immigration fraud:

Michael Liu is associated with Happy Baby Inc. Exh. A and Exh 1-A @ ¶ 33.

On February 9, 2015, a pregnant Asian woman was walking in her pajamas in the Reserves Apartment Complex in Rancho Cucamonga, California. Later that morning, an Asian woman was seen with an Asian man. Then two pregnant Asian women and a third non-pregnant Asian woman were walking around the complex. *Id.* at ¶ 34.

After a pretextual stop of a van used to transport the pregnant Asian woman, agents reviewed immigration documents which stated that her listed destination was in Hawaii, and not Rancho Cucamonga. The brainstormed rationale by the government was that the Chinese women were attempting to avoid detection by going to Rancho Cucamonga to give birth, as opposed to Hawaii.  This really makes no sense as Hawaii is also in the United States, and it is legal to be pregnant and give birth in either of those locations. None of the women stated an illegal reason for the representations made to immigration officials. Agents later realized that women were staying in apartments subleased by Liu and Dong.  *Id.* at ¶ 34.

Other pregnant Asian women were spotted in the complex. The agents reviewed the pregnant Asian women's tourist applications. Some of them listed different locations where they intended to stay, and differing lengths of stay. *Id.* at ¶ 35.

 Quite frankly, reading how the agents stalked these women in a fashion similar to a pursuit of a felony truck trafficking operation, and then proceeded to bully and to intimidate them is terrifying. The pretextual door knocks by police and fire marshals was disgusting. All of this was to help the government in its pursuit—not to enforce immigration and tax laws—but to stop Chinese women from coming to our country to have American babies.

Still, after all of the above, no evidence was articulated which alleged that Liu or Dong knew that Chinese birth tourists' "visas had been procured by fraud, guiding them to making false statements in their visa application, and providing false information to U.S. Customs."

Yet, the government made the following false representation in its opposition

4

brief in regards to interviews/harassment of Chinese birth mothers:

> These paragraphs established more than sufficient probable cause to believe that defendants were engaged in immigration fraud, namely, hosting pregnant customers from China knowing their visas had been procured by fraud, guiding them on making false statements in their visa applications, and providing false information to U.S. Customs.

Govt. Opp., p.11. Blair's affidavit contains no representations that Liu or Dong knew that birth tourists engaged in immigration fraud. He simply made up that fact. In the instant case, one would have to infer from the presence of pregnant Chinese women living in apartments subleased by Liu and Dong, some having informed immigration officials that their destination or length of stay was different than their ultimate destination or actual length of stay, that Liu and Dong were connected to immigration fraud. *See Underwood*, 725 F.3d at 1084.

## B.    HORRIBLE INVESTIGATIVE TECHNIQUES MISLED THE MAGISTRATE REGARDING ALLEGED TAX FRAUD.

Judge Gandhi signed off on the search warrant based upon facts which were submitted under oath by SA Blair. SA Blair's full recitation of facts supporting tax fraud and related financial crimes are based upon what he was told by SA Marquez. No attachments appear to have been provided to Judge Gandhi along with SA Blair's affidavit. The government did not bother to obtain declarations from either Marquez or Blair to respond to the serious allegations by Ms. Dong through accounting expert Knudson in Exhibit 1. Instead the government merely argues, "The Magistrate Judge was correct that the above facts are sufficient to establish probable cause, *i.e.*, 'the probability' that defendants were engaged in the criminal activity...." Govt. Opp., p. 12. The government does not state to what degree of probability that defendants were engaged in criminal activity.  If the standard is "a fair probability," that certainly requires some actual evidence of criminality before granting the government's request. Nobody should have speculated that simply because a few tourists did not provide perfect answers to immigration officials, that USA Happy Baby was somehow involved in immigration fraud. This Court has the duty of asking whether Judge Gandhi had a substantial basis for believing that the government fulfilled its probable cause burden. *Gates*, 462 U.S. 238-39.

Without serious misrepresentations of fact, the government would not have any evidence to support the issuance of a search warrant. Mr. Knudson covered the government's complete ignorance or deliberate misrepresentation in assessing whether defendants violated any law regarding foreign bank accounts. Ms. Dong's Chinese account was not opened until 2014. The account was timely reported in defendants' joint 1040 return as noted on Form 8938 for the year 2014 and filed in 2015. See Knudson report, Exhibit 2, ¶ 39.

A glaring example of why, at the very least, a *Franks* hearing should be scheduled is the following:  On at least four occasions, including Blair's affidavit at ¶ 68, and the government's opposition to the underlying motion to suppress at pages 2, 5 and 12, the government and its agents misrepresent Michael Liu's stated income when applying for a lease at Ironwood Apartments. Each of those references contain the following misrepresentation of fact: "...defendant Liu reported in an apartment lease application that his annual income was $1,283,812, with monthly gross receipts of $213,968 (i.e., $2.5mm per year)." The truth is contained at government bates stamp page USA_Misc_003843, which is also attached to the supplemental declaration and report of Carl R. Knudson as Exhibit 2-C. Mr. Liu represented to the Ironwood leasing office that his 2012 taxable income was $53,000 based on his 2012 Form 1040. That was the only information Liu provided to the leasing agent regarding his 2012 income. Under the request of the Leasing Office, Liu provided the latest 2 month bank statements of Happy Baby for review. On Happy Baby's bank account statement the cited number of $106,948.33 was summated from selected deposits and appeared to be handwritten by someone other than Liu. Exhibit 2-D; USA_MISC_003848. Most likely, the leasing Office adopted a 2-month gross receipts calculation of Liu's business (USA Happy Baby) to do the background check for its leasing process. Mr. Liu does not know who wrote the estimated income amount for 2013 for two months which was $213,968, but that figure apparently indicated only the business income of Happy Baby instead of his personal income. Most likely the summated and average numbers came from the third party, as they did not come from Mr. Liu.

It is seriously troubling that the government would reference the above

6

incorrect tax analysis three times in its opposition brief.  Undoubtedly, the incorrect information was the government's best evidence of tax crimes. The government ignored the leasing application *in its own possession* where Liu truthfully represented a 2012 income of $53,000. Then the government misconstrued a one-month bank statement showing a beginning balance of $106,948.33. That beginning balance was likely estimated to continue for another month for a grand total of two months. The government miscalculated "213,968" as being for only one month, and then stretched out over a year, and of course overestimating even the incorrect number, to reach the $2.5 million figure. All of this can be seen be reviewing Mr. Knudson's second report, Exhibit 2 and Exhibit 2-D. The $2.5 million income figure was basically invented by the government in order to obtain its search warrant and to prosecute innocent American citizens. The government then perpetuated the untruth over and over again in its opposition brief. This malicious manipulation of the facts justifies further review by the trial court.

When applying for the search warrant, the government only possessed bank records for a single account, in the name of Jing Dong, ending in 0831. Discovery reflects that no other bank records were obtained by the government until after the search of defendants' home and business. SA Marquez speculated that Liu violated tax laws in 2012 or 2013, based on the limited analysis of a single bank account (Jing Dong Account ending in 0831)for the period 2013-2015. The 2014 and 2015 tax returns were neither due, nor presented to the IRS on the date of the March 2, 2015 search warrant.

The bank statements in discovery for account 0831 began in January 2010. Knudson's analysis began on January 1, 2013 which showed that the $11,925 in deposits to this account in 2013 were virtually all transfers from other accounts. There were total deposits of $172, 262 into 0831 in 2014. $151,158 of the deposits were transfers from other accounts, not business receipts or deposits identified as income.  Further, there was no evidence that the remaining $21,104 was potential income to Dong, Liu or USA Happy Baby.  A deposit to a bank account is not proof

that "income" was received.  Mr. Knudson has tried to make this point clear with the government, but he government does not wish to accept that basic premise.

Section N of Blair's affidavit contains no evidence that confirms that there was unreported income for 2011 or 2012.

Mr. Knudson's conclusion that non-transfer items were not income is based on the fact that no evidence was provided by SA Marquez that any of the $173,000 in deposits constituted income to either Dong or Liu, and there is no evidence that the government confirmed through an actual witness that any of the $21,104 was in fact income.  A bank officer cannot testify that a deposit is income. A government employee cannot testify that a deposited item is income unless he or she was a party to the transaction. Exh. 2, Knudson report at ¶13(a).

To justify a hearing, a defendant must make specific allegations, allege a deliberate falsehood or reckless disregard for the truth, and accompany such a claim with a detailed offer of proof." *United States v. Craighead*, 539 F.3d 1073, 1080 (9th Cir. 2008). From the beginning, the government utilized Marquez and Blair as advocates, rather than objective investigators working on behalf of the taxpayers. Their roles led them to reach reckless conclusions against law-abiding citizens creating horrific results. Ms. Dong has fulfilled her burden, and therefore demands a hearing on the issues raised herein.

## C.    CONCLUSION

No matter how many Chinese women are seen walking around an apartment complex who provided incorrect information to immigration officials regarding their ultimate destination, and because Happy Baby marketed itself as a temporary location for those expectant Chinese mothers, it is not enough for a substantial basis to conclude that Liu and Dong were engaged in crime or possessed indicia of crime in their residence and business properties. The government was on a fishing expedition, preying upon xenophobic reactions to justify its intrusion into the privacy of American citizens.

In its opposition brief, the government could have allowed SA Blair to respond to the allegations contained in the suppression motion. Or, at the very least, the government could have argued specific details of Blair's affidavit which actually supported probable cause for the search. Instead of taking either approach, the government attempts to defeat this motion by pointing out flaws in the defense's lack of "citation" or "evidence" in its factual assertions. SA Blair's affidavit contained many interesting facts about Chinese women who moved to Rancho Cucamonga to give birth to American babies. None of those facts could lead a reasonable magistrate to conclude that there was a fair probability that Dong and Liu were involved in crimes, or evidence of crimes would be located at their home or business properties. The government was forced to rely on misrepresentations and material omissions to the magistrate in order to win the search order.

# DECLARATION OF JOHN NEIL McNICHOLAS

I, John Neil McNicholas, do hereby declare under penalties of perjury that the following is true.

1. I am an attorney, duly licensed in the State of California, admitted to practice before the United States District Court in and for the Central District of California, and represent Jing Dong in this matter.

2. A true and correct copy of Exhibit E, a Report of Investigation dated February 7, 2019 by Dept. Of Homeland Security Special Agent Eric A. Blair as provided in discovery in this case, is being filed separately and under seal.

3. The Declaration of Carl R. Knudson, his supporting Exhibit 2, and sub-exhibits A, B, C, D and E are fully incorporated into this reply by reference.

Dated this 10th day of February, 2024, in Redondo Beach, California.

/s/ *John Neil McNicholas*

JOHN NEIL McNICHOLAS

# DECLARATION OF JING DONG

1. I am named as defendant number 3 in the instant case *United States v. Happy Baby, Inc., et al.*, 5:19-cr-00027-PSG. This declaration has been translated to me in my native language of Mandarin, and I am competent to testify as to all matters declared herein.

2. I make this supplemental declaration under the compulsion of Local Rule 12-1.1 and based on the understanding that *Simmons v. United States,* 390 U.S. 377 (1968) holds that nothing I say in this declaration will be used against me or admitted into evidence in the government's case-in-chief at trial. I already expressed ownership interest in the places searched and items seized in my declaration supporting the underlying motion to suppress. I do not intend to waive my Fifth Amendment right against self-incrimination in submitting this declaration. *Simmons v. United States,* 390 U.S. 377 (1968).

3. My husband, Michael Liu ("my husband") and I at all times relevant to the investigation, search, and charging of this case, have been citizens of the United States.

4. In and around 2010-2012, my husband and I rented an extra room in our home to random visitors as a vacation rental. It was a good way to supplement our income, as we previously relied upon my husband's income to pay the mortgage, for our three children, and pay other bills.

5. Yosemite was a birth tourism company based in China. Yosemite contracted with several companies in the United States who provided housing and other services for expectant Chinese mothers.

6. Around 2012, a representative from Yosemite asked my husband and me to provide housing to expectant mothers from China at a prearranged fee, assist with finding an ob/gyn who would handle labor and delivery of the child, refer people in the area who would assist mothers in obtaining United States citizenship, verify documents, like birth certificates, Social Security Cards and passports for the newborn babies, and provide transportation and groceries during their stay.

7. Most of our expectant mother clients stayed at apartments which we leased for about three months; sometimes for shorter periods, and sometimes for longer periods.

8. We had no involvement in immigration fraud, international money laundering, identity theft, or tax fraud at any time.

9. My husband and I filed our tax returns jointly every year ever since year 2006 when we moved from Taiwan to California.

10. In 2013, with the financial support of my parents and my husband's parents, my husband and I purchased two condominiums for both of our parents to live in the same complex in San Bernardino County. The government has incorrectly argued that family housing loans were somehow connected to USA Happy Baby.

11. Since China restricts its Chinese citizens from making outward remittance of their financial assets above $50,000 USD per year, my parents and I asked "nominees" to transfer their financial assets to United States.

12. Nominees were utilized to facilitate several international wire-in transactions in 2013 to enable the purchase of our two condominiums which were in the names of Liu and Dong.

13. I opened my own personal bank account in Shanghai in June, 2014 with the China Merchant Bank in order to collect the receivables from Chinese customers.

Subscribed and sworn on this _8_ day of February, 2024 in Rancho Cucamonga, California.

JING DONG

2

# CERTIFICATION OF INTERPRETER

I, _Jin Yan_, am fluent in the written and spoken English and
Mandarin Chinese languages. I accurately translated this declaration from English into
Mandarin Chinese to defendant JING DONG on this date.

_____                    02-08-2024
INTERPRETER                                 Date

3

# EXHIBIT E
# FILED SEPARATELY AND UNDER SEAL